J-A20042-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: G.H.W.-S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: T.S., FATHER | : | No. 416 MDA 2019 |

Appeal from the Decree Entered February 11, 2019
In the Court of Common Pleas of York County
Orphans' Court at No(s):  2018-0088a,
2018-0089a, CP-67-DP-0000306-2017,
CP-67-DP-0000307-2017

| | | |
|---|---|---|
| IN RE: ADOPTION OF: A.M.W.-S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: T.S., FATHER | : | No. 418 MDA 2019 |

Appeal from the Decree Entered February 11, 2019
In the Court of Common Pleas of York County
Orphans' Court at No(s):  2018-0088a

| | | |
|---|---|---|
| IN THE INTEREST OF: G.W.-S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: T.S., FATHER | : | No. 433 MDA 2019 |

Appeal from the Dispositional Order Entered February 11, 2019
In the Court of Common Pleas of York County
Juvenile Division at No(s):  CP-67-DP-0000306-2017

| | | |
|---|---|---|
| IN THE INTEREST OF: A.M.W.-S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: T.S., FATHER | : | No. 435 MDA 2019 |

Appeal from the Dispositional Order Entered February 11, 2019
In the Court of Common Pleas of York County

Juvenile Division at No(s): CP-67-DP-0000307-2017

BEFORE: GANTMAN, P.J.E., McLAUGHLIN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY GANTMAN, P.J.E.: **FILED SEPTEMBER 25, 2019**

Appellant, T.S. ("Father"), appeals from the decrees entered in the York County Court of Common Pleas, which granted the petitions for involuntary termination of his parental rights to G.W.-S. (born in March 2016) and A.M.W.-S. (born in June 2017) ("Children"),[1] and the concurrent dispositional orders which changed the goals to adoption.[2] We affirm and grant counsel's petition to withdraw.

The trial court opinions accurately set forth the relevant facts and procedural history of this case. Therefore, we have no reason to restate them.

Preliminarily, appellate counsel seeks to withdraw his representation pursuant to **Anders v. California**, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d

---

[1] The court was not required to appoint separate legal-interests counsel for Children due to their young ages. **See In re T.S.**, ___ Pa. ___, 192 A.3d 1080 (2018), *cert. denied*, ___ U.S. ___, 139 S.Ct. 1187, 203 L.Ed.2d 220 (2019) (establishing presumption that child three years of age or younger cannot form subjective, articulable preference that would necessitate appointment of separate legal counsel to advocate during termination proceeding).

[2] The termination decrees and goal change orders are dated February 7, 2019, time stamped February 8, 2019, and entered on the docket on February 11, 2019. Father properly filed four separate notices of appeal, one for each child regarding the goal change and one for each child regarding the termination of parental rights. **See Commonwealth v. Walker**, ___ Pa. ___, 185 A.3d 969 (2018) (requiring as of June 1, 2018, separate notices of appeal from single orders which resolve issues arising on separate trial court docket numbers). This Court subsequently consolidated the appeals.

493 (1967) and **Commonwealth v. Santiago**, 602 Pa. 159, 978 A.2d 349 (2009). **Anders** and **Santiago** require counsel to: 1) petition the Court for leave to withdraw, certifying that after a thorough review of the record, counsel has concluded the issues to be raised are wholly frivolous; 2) file a brief referring to anything in the record that might arguably support the appeal; and 3) furnish a copy of the brief to the appellant and advise him of his right to obtain new counsel or file a *pro se* brief to raise any additional points the appellant deems worthy of review. **Santiago, supra** at 173-79, 978 A.2d at 358-61. Substantial compliance with these requirements is sufficient. **Commonwealth v. Wrecks**, 934 A.2d 1287, 1290 (Pa.Super. 2007).

In **Santiago, supra**, our Supreme Court addressed the briefing requirements where court-appointed appellate counsel seeks to withdraw representation:

> Neither **Anders** nor **McClendon**[3] requires that counsel's brief provide an argument of any sort, let alone the type of argument that counsel develops in a merits brief. To repeat, what the brief must provide under **Anders** are references to anything in the record that might arguably support the appeal.
>
> *   *   *
>
> Under **Anders**, the right to counsel is vindicated by counsel's examination and assessment of the record and counsel's references to anything in the record that arguably supports the appeal.

---

[3] **Commonwealth v. McClendon**, 495 Pa. 467, 434 A.2d 1185 (1981).

*Santiago, supra* at 176, 177, 978 A.2d at 359, 360.  Thus, the Court held:

> [I]n the *Anders* brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous.  Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Id.* at 178-79, 978 A.2d at 361.

Instantly, appellate counsel filed a petition to withdraw.  The petition states counsel conducted a thorough review of the record and determined the appeal is wholly frivolous.  Counsel also supplied Father with a copy of the brief and a letter explaining Father's immediate right to retain new counsel or proceed *pro se* to raise any additional issues Father deems worthy of this Court's attention.  In the *Anders* brief, counsel provides a summary of the facts and procedural history of the case.  Counsel's argument refers to relevant law that might arguably support Father's claims.  Counsel further states the reasons for his conclusion that the appeal is wholly frivolous.  Therefore, counsel has substantially complied with the requirements of *Anders* and *Santiago*.

Counsel raises the following issues on Father's behalf:

> WHETHER THE COURT ABUSED ITS DISCRETION IN FINDING THAT THE YORK COUNTY OFFICE OF CHILDREN, YOUTH AND FAMILIES ESTABLISHED BY CLEAR AND CONVINCING EVIDENCE THAT THE STATUTORY GROUNDS

EXISTED TO JUSTIFY TERMINATING THE PARENTAL RIGHTS OF THE BIOLOGICAL FATHER PURSUANT TO 23 PA.C.S.A. § 2511(A)(1)(2) AND (5)?

WHETHER THE TRIAL COURT MADE AN ERROR OF LAW OR ABUSED ITS DISCRETION IN CONCLUDING THAT AN INVOLUNTARY TERMINATION OF PARENTAL RIGHTS OF THE NATURAL FATHER WOULD BEST SERVE THE NEEDS AND WELFARE OF THE CHILD PURSUANT TO SECTION 2511(B) OF THE ADOPTION ACT?

WHETHER THE COURT ABUSED ITS DISCRETION IN CHANGING THE COURT ORDERED GOAL FROM REUNIFICATION TO ADOPTION?

(**Anders** Brief at 4).[4]

The standard and scope of review applicable in goal change and termination of parental rights cases are as follows:

> On appeal, goal change decisions are subject to an abuse of discretion standard of review. **In re N.C.**, 909 A.2d 818, 822 (Pa.Super. 2006).

> > In order to conclude that the trial court abused its discretion, we must determine that the court's judgment was "manifestly unreasonable," that the court did not apply the law, or that the court's action was "a result of partiality, prejudice, bias or ill will," as shown by the record. We are bound by the trial court's findings of fact that have support in the record. The trial court, not the appellate court, is charged with the responsibilities of evaluating credibility of the witness[es] and resolving any conflicts in the testimony. In carrying out these responsibilities, the trial court is free to believe all, part, or none of the evidence. When the trial court's findings are supported by competent evidence of record, we will affirm, "even if the record could also support an opposite result."

---

[4] Father has not filed a reply brief *pro se* or with newly retained counsel.

- 5 -

*Id.* at 822-23 (internal citations omitted).

***In re R.M.G.***, 997 A.2d 339, 345 (Pa.Super. 2010), *appeal denied*, 608 Pa. 648, 12 A.3d 372 (2010). Additionally:

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that it would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.
>
> Furthermore, we note that the trial court, as the finder of fact, is the sole determiner of the credibility of witnesses and all conflicts in testimony are to be resolved by the finder of fact. The burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so.
>
> The standard of clear and convincing evidence means testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. We may uphold a termination decision if any proper basis exists for the result reached. If the trial court's findings are supported by competent evidence, we must affirm the court's decision, even though the record could support an opposite result.

***In re Adoption of K.J.***, 936 A.2d 1128, 1131-32 (Pa.Super. 2007), *appeal denied*, 597 Pa. 718, 951 A.2d 1165 (2008) (internal citations omitted).

> Before filing a petition for the termination of a parent's rights, the Commonwealth is required to make reasonable efforts to promote reunification between a child and [his]

parents. The Commonwealth's obligation in this regard is not indefinite, however, because in addition to the parents' interests the Commonwealth must also respect the child's right to a stable, safe, and healthy environment. When reasonable efforts at reunification have failed, then the child welfare agency must work towards terminating parental rights and placing the child with adoptive parents. As we have repeatedly acknowledged, [a] child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting.

\* \* \*

Under section 2511, the trial court must engage in a bifurcated process. The initial focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies at least one of the…statutory grounds delineated in section 2511(a). If the trial court determines that the parent's conduct warrants termination under section 2511(a), then it must engage in an analysis of the best interests of the child…under section 2511(b), taking into primary consideration the developmental, physical, and emotional needs of the child.

\* \* \*

[A] best interest of the child analysis under [section] 2511(b) requires consideration of intangibles such as love, comfort, security, and stability. To this end, this Court has indicated that the trial court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond. Moreover, in performing a "best interests" analysis[, t]he court should also consider the importance of continuity of relationships to the child, because severing close parental ties is usually extremely painful. The court must consider whether a natural parental bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship. Most importantly, adequate consideration must be given to the needs and welfare of the child.

*In re I.J.*, 972 A.2d 5, 9-12 (Pa.Super. 2009) (internal citations and quotation

marks omitted).

Section 2511 outlines certain irreducible minimum requirements of care that parents must provide for their children, and a parent who cannot or will not meet the requirements may properly be considered unfit and have his parental rights terminated. *In re B.L.L.*, 787 A.2d 1007 (Pa.Super. 2001).

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this [C]ourt has held that the parental obligation is a positive duty which requires affirmative performance.
>
> *    *    *
>
> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his…ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship.

*In re B.,N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004), *appeal denied*, 582 Pa. 718, 872 A.2d 1200 (2005) (internal citations omitted). Accordingly, "a parent's basic constitutional right to the custody and rearing of his…child is converted, upon the failure to fulfill his…parental duties, to the child's right to have proper parenting and fulfillment of his…potential in a permanent, healthy, safe environment." *Id.* at 856. "Above all else[,] adequate consideration must be given to the needs and welfare of the child. A parent's

own feelings of love and affection for a child, alone, do not prevent termination of parental rights." *In re Z.P.*, 994 A.2d 1108, 1121 (Pa.Super. 2010) (internal citations omitted).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinions of the Honorable Todd Russell Platts, we conclude Father's issues merit no relief. The trial court opinions comprehensively discuss and properly dispose of the questions presented. (*See* Rule 1925(a) Opinion, filed April 5, 2019, at 1-3; Adjudication Decision, filed February 11, 2019, at 8-22) (examining all aspects of case in light of relevant statutes and concluding Agency proved by clear and convincing evidence that termination of Father's parental rights, and goal changes from reunification to adoption, are in Children's best interests; Father made minimal progress toward alleviating circumstances which necessitated placement of Children; Father declined to be resource for Children; Father offered no testimony in opposition to termination of his parental rights or Children's goal change; while attending first day of hearing, by phone, Father was also shopping in department store and notably distracted from proceedings). Following our independent review of the record, we agree the appeal is frivolous and grant counsel's petition to withdraw. Accordingly, we affirm on the basis of the trial court opinions.

Decrees and orders affirmed; counsel's petition to withdraw is granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/25/2019

# IN THE COURT OF COMMON PLEAS OF YORK COUNTY, PENNSYLVANIA

In the Interest of:

G.W.S. : No. CP-67-DP-306-2017
A.W.S. : No. CP-67-DP-307-2017
     Minor Children : Change of Goal

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

In Re: Adoption of :

G.W.S. : No. 2018-0089
A.W.S. : No. 2018-0088
     Minor Child : Termination of Parental Rights

## APPEARANCES:

Martin Miller, Esquire
For Children and Youth Services

Sherry Myers, Esquire
Counsel for the Mother

Marc Semke, Esquire
Counsel for the Father

David Worley, Esquire
Guardian ad litem

Dorothy Miles
Caseworker

## ADJUDICATION

Before this Court is a Petition to Change Court Ordered Goal (hereinafter, "COG")

and a Petition for Involuntary Termination of Parental Rights (hereinafter, "ITPR") filed by

York County Office of Children, Youth and Families (hereinafter, "Agency") on July 16,

2018, regarding G.W.S. and A.W.S. (hereinafter, "the minor children") whose dates of birth

are in March 2014 and June , 2017, respectively.

Evidentiary hearings were held on Tuesday, October 9, 2018, and Friday, November

16, 2018, to address testimony and evidence relating to E.W. (hereinafter,

"Mother") and T.S. (hereinafter, "Father"). Mother appeared at the

1

evidentiary hearings represented by counsel, Attorney Sherry Myers. Father appeared at the evidentiary hearings via telephone and represented by counsel, Attorney Marc Semke.

The entire Dependency Records for the minor children, docketed at CP-67-DP-306-2017 and CP-67-DP-307-2017, were incorporated into the hearing record. A Stipulation of Counsel was filed on October 5, 2018, and was signed by counsel for the Agency, the guardian ad litem and legal counsel for the minor children, and counsel for Mother, while counsel for Father verbally agreed to it on October 9, 2018. The Agency's exhibits 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, and 14 were admitted into the record. The Court took judicial notice of all dependency orders entered in this matter. The record for the Petition to Change Court Ordered Goal and the Petition for Involuntary Termination of Parental Rights was held open by the Court until January 7, 2019, at which time Counsel for the parties endorsed and filed a Supplemental Stipulation of Counsel. Said Supplemental Stipulation incorporated into the record, without the need for additional testimony, Dr. Jonathan Gransee's Parenting Capacity Assessment of Mother and Ryan Milley's Psychiatric Evaluation of Mother.

Based upon the testimony and evidence presented at the hearing, as well as the history of this case, the Petition to Change Court Ordered Goal and the Petition for Involuntary Termination of Mother's and Father's Parental Rights are **GRANTED** as to G.W.S. and A.W.S.

2

## FINDINGS OF FACT

1. The minor children, G.W.S. and A.W.S., were born in March , 2016, and June 2017, respectively.

2. The natural Mother of the minor children is   E.W.   , whose current address is              . Pennsylvania    .

3. The natural Father of the minor children is   T.S.,             , whose current address is                  Maryland   .

4. A Petition to Change Court Ordered Goal and a Petition for Involuntary Termination of Parental Rights were filed by the Agency on July 16, 2018.

5. A Certification of Acknowledgement of Paternity for the minor children was filed on July 19, 2018, which indicates that there is a claim or Acknowledgement of Paternity on file for the minor children.

6. An Application for Emergency Protective Custody was filed by the Agency on August 25, 2017.

7. In an Order for Emergency Protective Custody dated August 25, 2017, sufficient evidence was presented that continuation or return of the minor children to the home of Mother and Father was not in the best interests of the minor children. Legal and physical custody of the minor children were awarded to the Agency. The minor children were to be placed in kinship non-relative care.

3

8. In a Shelter Care Order dated August 28, 2017, sufficient evidence was presented to prove that continuation or return of the minor children to the home of Mother and Father was not in the best interests of the minor children. Legal and physical custody of the minor children were awarded to the Agency. The minor children were to remain in foster (kinship) care.

9. A Dependency Petition was filed by the Agency on August 30, 2017. The allegations contained in the Dependency Petition were consistent with the allegations contained in the Application for Emergency Protective Custody.

10. On September 8, 2017, the minor children were adjudicated dependent. Legal and physical custody were awarded to the Agency. The minor children were to remain in kinship foster care. The goal initially established was return to a parent or guardian.

11. The minor children have remained dependent since September 8, 2017, and the minor children have not returned to the care and custody of Mother or Father since August 25, 2017.

12. Family Service Plans were prepared and dated as follows:

    a. Initial Family Service Plan dated February 1, 2017.

    b. Revised Family Service Plan dated August 7, 2017.

    c. Revised Family Service Plan dated November 27, 2017.

    d. Revised Family Service Plan dated February 12, 2018.

    e. Revised Family Service Plan dated August 6, 2018.

4

13. In a Permanency Review Order dated February 6, 2018, the Court made certain findings and conclusions including, but not limited to:

   a. There had been moderate compliance with the Permanency Plan by Mother and there had been minimal compliance with the Permanency Plan by Father.

   b. Reasonable efforts had been made by the Agency to finalize the Permanency Plan.

   c. Mother had made moderate progress toward alleviating the circumstances which necessitated the original placement and Father had made minimal progress toward alleviating the circumstances which necessitated the original placement.

   d. Legal and physical custody of the minor children were confirmed with the Agency.

   e. There continued to be a need for placement of the minor children outside the care and custody of Mother and Father.

14. In a Permanency Review Order dated July 19, 2018, the Court made certain findings and conclusions including, but not limited to:

   a. There had been minimal compliance with the Permanency Plan by Mother and there had been minimal compliance with the Permanency Plan by Father.

   b. Reasonable efforts had been made by the Agency to finalize the Permanency Plan.

c. Mother had made minimal progress toward alleviating the circumstances which necessitated the original placement and Father had made minimal progress toward alleviating the circumstances which necessitated the original placement.

d. Legal and physical custody of the minor children were confirmed with the Agency.

e. There continued to be a need for placement of the minor children outside the care and custody of Mother and Father.

15. In a Permanency Review Order dated January 8, 2019, the Court made certain findings and conclusions including, but not limited to:

a. There had been moderate compliance with the Permanency Plan by Mother and there had been minimal compliance with the Permanency Plan by Father.

b. Reasonable efforts had been made by the Agency to finalize the Permanency Plan.

c. Mother had made moderate progress toward alleviating the circumstances which necessitated the original placement and Father had made minimal progress toward alleviating the circumstances which necessitated the original placement.

d. Legal and physical custody of the minor children were confirmed with the Agency.

6

e. There continued to be a need for placement of the minor children outside the care and custody of Mother and Father.

16. A Catholic Charities Intensive Family Service Team opened for services with Mother on October 13, 2017, and closed unsuccessfully on June 8, 2018. The team closed out with services due to a lack of progress and consistency as well as non-compliance by Mother.

17. Mother was admitted to the Roxbury Treatment Center on August 18, 2017, and was discharged on August 25, 2017. At the time of discharge, Mother had been diagnosed with major depressive disorder, recurrent severe without psychotic features; sedative use disorder; alcohol use disorder; opioid use disorder; r/o borderline intellectual functioning.

18. Mother is currently under supervision by Adams County Adult Probation and Parole.

19. The first Interstate Compact was performed on Father but was denied.

20. The minor child, G.W.S., initially participated in physical therapy but no longer receives such therapy. The minor child, A.W.S., currently participates in physical therapy.

21. A pre-adoptive resource has been identified for the minor children.

7

## DISCUSSION

### I. Petition for Change of Goal

Before the Court can change the goal for a child in a juvenile dependency action, the Agency must prove by clear and convincing evidence that the change of goal would be in the child's best interest. In re Interest of M.B., 674 A.2d 702 (Pa. Super. 1996). In making a disposition, the Court should consider what is best suited to the protection and physical, mental, and moral welfare of the child. 42 Pa.C.S.A §6351; In re Davis, 502 Pa. 110, 121, 465 A.2d 614, 619 (1983). In rendering a disposition "best suited to the protection and physical, mental, and moral welfare of the child," the hearing court must take into account "any and all factors which bear upon the child's welfare and which can aid the court's necessarily imprecise prediction about that child's future well-being." In re Davis, 502 Pa. 110, 122, 465 A.2d 614, 620 (1983).

The purpose of the Juvenile Act is to preserve family unity and to provide for the care, protection, safety and wholesome mental and physical development of the child. 42 Pa.C.S.A. 6301(v)(1)-(1.1). The Juvenile Act was not intended to place children in a more perfect home; instead, the Act gives a court the authority to "intervene to ensure that parents meet certain legislatively determined *irreducible minimum standards* in executing their parental rights." In re J.W., 578 A.2d 952, 958 (Pa. Super. 1990) (emphasis added).

When a child is placed in foster care, the parents have an affirmative duty to make the changes in their lives that would allow them to become appropriate parents. In re Diaz, 669

8

A.2d 372, 377 (Pa. Super. 1995). A family service plan is created to help give the parents some guidelines as to the various areas that need to be improved. In the Interest of M.B., 565 A.2d 804, 806 (Pa. Super. 1989), app. Denied, 589 A.2d 692 (Pa. 1990). By assessing the parents' compliance and success with this family service plan, the Court can determine if the parents have fulfilled their affirmative duty. In re J.S.W., 651 A.2d 167, 170 (Pa. Super. 1994).

Under Section 6351 of the Adoption Act, the Agency has the burden to show a goal change would serve the child's best interests and the "safety, permanency, and well-being of the child must take precedence over all other considerations." In re D.P., 972 A.2d 1221, 1227 (Pa. Super. 2009), appeal denied, 973 A.2d 1007 (Pa. 2009). Thus, even where the parent makes earnest efforts, the "court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." In re Adoption of R.J.S., 901 A.2d 502, 513 (Pa. Super. 2006).

In the present matter, the Agency has proven by clear and convincing evidence that it is in the minor children's best interests to change the goal to placement for adoption. From September 8, 2017, when the minor children were adjudicated dependent, until the Agency's filing of the Petition for ITPR on July 16, 2018, approximately ten (10) months later, Mother and Father had made only minimal progress toward alleviating the circumstances which necessitated the minor children's placement.

9

The Agency initially became involved with the family in December 2016, due to concerns regarding Mother's mental health and environmental conditions of the home. A Justice Works Team opened for services with Mother on January 11, 2017, to ensure that the family's residence was stable and would not put the minor child, G.W.S., at risk. Mother made moderate progress in maintaining an appropriate living environment for the minor child but failed to change litter boxes which caused the cats to urinate and defecate on the carpets and floors. Mother also experienced a brief period of time during Justice Work's involvement where her residence's electricity was turned off due to non-payment. The Justice Works Team closed unsuccessfully due to Mother's noncompliance and inconsistency with appointments and visits.

A Catholic Charities Intensive Family Services Team opened for services with Mother on October 13, 2017, but closed unsuccessfully on June 8, 2018, due to a lack of progress and consistency as well as non-compliance by Mother. A Pressley Ridge Team opened for services with Mother on July 26, 2018, and was providing services to Mother at the time of the hearings on the Petitions for COG and ITPR. Despite receiving services over approximately twenty-five (25) months, including for approximately eight (8) months prior to the Dependency Petition being filed, Mother never progressed to unsupervised visitation with the minor children during the course of the adjudication of dependency.

Mother received a Parenting Capacity Assessment (hereinafter, "the Assessment") by Dr. Jonathan Gransee, dated October 10, 2018, to provide information regarding her

10

psychological functioning and to determine her capacity to parent the minor children. Dr. Gransee indicated in the Assessment that Mother gave birth to the younger of the minor children, A.W.S., in June , 2017, and five (5) days later, overdosed as a result of taking too many pills. The Agency was advised on August 16, 2017, that Mother had again overdosed on pills, was hospitalized, and in a coma. Mother overdosed a third time immediately prior to a Permanency Review Hearing before this Court on May 3, 2018.

Dr. Gransee stated in the Assessment that Mother self-reported a history of depression as well as various symptoms that are related to a trauma disorder. He stated that Mother comes from an abusive background and seems to have emotional and behavioral issues stemming from a chaotic home environment during her childhood. Dr. Gransee stated that Mother "seems to have grown into an adult with anger management issues, violent tendencies, and pervasive problems in relationships." Mother has also been both a perpetrator and victim of domestic violence on several occasions.

Mother has been arrested three (3) times since the adjudication of dependency and was incarcerated in March 2018 for a conviction of harassment where her mother (hereinafter, "Maternal Grandmother") was the victim. At the time of the hearings on the Agency's Petition for ITPR, Mother insisted that Maternal Grandmother and she no longer live in the same residence; however, the caseworker, Dorothy Miles, (hereinafter, "the Caseworker") reported to Dr. Gransee and testified at the hearings that she believes Mother and Maternal Grandmother are in fact living together.

11

**Dr. Gransee stated in the Assessment that "at this point...[Mother] does not have the capacity to manage herself, let alone another living being, and as such, her capacity to parent a child is impaired."** He suggested that Mother get herself stable by addressing her emotional issues and issues with her employment, finances and housing. He further recommended that Mother attend therapy to address her emotional and behavioral issues at least once per week and to participate in a domestic violence program, which would involve treating Mother for being both a perpetrator and a victim. At the final day of the hearing on the ITPR Petition, Mother had not yet scheduled her participation in such a program.

Since the adjudication of dependency, Mother has not performed any parental duties on behalf of the minor children other than what has occurred during supervised visits. Mother has not sent the minor children any birthday gifts or cards throughout the course of dependency, and the Caseworker stated that Mother "never calls to check on the kids." When Mother was notified that she had gifted the wrong size of clothing for the children, she failed to replace those items with proper fitting clothes. The youngest of the minor children has been out of Mother's custody since shortly after the child's birth, while the older of the minor children was placed with the kinship mother when he was approximately sixteen (16) months old. At this time, the oldest child, G.W.S., has lived more than half of his life with kinship mother and the youngest child, A.W.S., has lived almost the entirety of her life with kinship mother.

12

Since the adjudication of dependency, Father has made minimal progress toward alleviating the circumstances which necessitated the minor children's placement. From the beginning of the Agency's involvement with this family, Father stated that he was not a resource for the minor children. When the first Interstate Compact on the Placement of Children (hereinafter, "ICPC") referral was made, Father reiterated his unwillingness to be a resource and the first ICPC was denied at Father's request. A second ICPC referral was made but was never completed due to non-cooperation by Father.

Father has been hospitalized for mental health reasons two (2) times since the adjudication of dependency and has not been fully compliant with providing documentation to the Agency regarding his mental health treatment. Furthermore, Father has not visited with the minor children since September 2018, and he only visited with the minor children a total of seven (7) times between October 2017 and September 2018. Since the adjudication of dependency, Father has not performed any parental duties on behalf of the minor children and has not attended any of the minor children's medical appointments. Father does not have any type of bond with the minor children.

Lastly, Father chose not to attend the two (2) days of testimony on the Petition for ITPR in person but rather participated by phone. Father failed to offer any testimony in opposition of his parental rights to the minor children being terminated. While participating by phone on the first day of testimony, Father was in a department store and was clearly distracted by his shopping instead of attentively participating in the hearing.

13

Overall, Mother has made minimal to moderate progress towards alleviating the circumstances which caused the minor children to be placed and Father has made minimal progress towards alleviating the circumstances which caused the minor children to be placed. Neither Mother nor Father have assumed any major parental duties for the minor children since approximately August 2017, approximately eighteen (18) months ago. The minor children have been in placement for approximately eighteen (18) months and adjudicated dependent for approximately seventeen (17) months. The minor children need a permanent, safe and stable environment. As such, the Court finds that the minor children's best interests demand that the goal be changed from reunification with a parent to placement for adoption.

## II.    Petition for Involuntary Termination of Parental Rights

The Agency argues that Mother's and Father's parental rights to the minor children should be terminated pursuant to 23 Pa.C.S. §2511(a)(1), (2), and (5) of the Adoption Act. The Agency has the burden of establishing by clear and convincing evidence that statutory grounds exist to justify the involuntary termination of parental rights. In re. Child M., 681 A.2d 793, 797 (Pa. Super. 1996). The clear and convincing standard means that the evidence presented by the Agency is so "clear, direct, weighty, and convincing" that one can "come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." Matter of Sylvester, 555 A.2d 1202, 1202-04 (Pa. 1989). The Agency must also present evidence proving that the termination of parental rights will serve the child's best interests. In the Matter of Adoption of Charles E.D.M. II, 708 A.2d 88, 92-3 (Pa. 1998). To determine

14

whether termination is within the best interest of the minor children, the court must examine the possible effect the termination would have on the children's needs and general welfare. In re. Adoption of Godzak, 719 A.2d 365, 368 (1998).

**THE AGENCY HAS PROVEN BY CLEAR AND CONVINCING EVIDENCE THAT PARENTAL RIGHTS TO THE MINOR CHILD MUST BE TERMINATED PURSUANT TO 23 Pa.C.S. §2511(a)(1)**

To terminate parental rights under 23 Pa.C.S. §2511(a)(1) of the Adoption Act, the Agency must establish by clear and convincing evidence that the parent has either demonstrated a settled purpose of relinquishing parental claim to the child or has failed to perform parental duties. In the Matter of Adoption of Charles E.D.M. III, 708 A.2d 88 (Pa. 1998). Once one (1) of the two (2) factors has been proven, the Court must examine the following factors:

1.  Parent's explanation for the conduct;
2.  Post-abandonment contact between parent and child; and
3.  Effect of termination on child. *Id.*

The Agency has proven by clear and convincing evidence that both Mother and Father have failed to take responsibility for the circumstances which necessitated the minor children's placement. Since the minor children's placement in August 2017, Father has consistently stated his unwillingness to be a resource for the children, and Mother remained uncooperative with the services deployed up until approximately July 2018, at which time the Agency filed its Petition to Change Court Ordered Goal and its Petition for ITPR.

15

While the Court noted in its January 8, 2019 Permanency Review Hearing Order that Mother had made moderate progress, such progress was since the filing of the Petition for ITPR, and the Court cannot statutorily take such progress into consideration under 23 Pa.C.S. §2511(a)(1). Even with such progress, Mother is not in a position to resume custody of the minor children at this time, and it is unknown as to when Mother would be in such a position to regain custody of the minor children.

The Agency has proven by clear and convincing evidence that Mother and Father have failed to perform any significant parental duties for the minor children since approximately August 2017. Since that time, they have neither attended any school functions or doctor/dental appointments for the minor children nor have they sent the minor children any gifts, cards or letters.

The Agency has proven by clear and convincing evidence that the termination of Mother's and Father's parental rights will have a positive effect on the minor children. The minor children are strongly bonded with the kinship mother and look to the kinship mother as a positive and loving parental figure. The Caseworker stated that the minor children call the kinship mother "Mom" and appear safe and loved in the kinship mother's care.

Overall, the Court finds that the termination of Mother's and Father's parental rights will provide a benefit to the minor children in that the children will achieve stability, safety and permanency in a loving and nurturing home. Therefore, for all the reasons stated above,

16

the Agency has proven by clear and convincing evidence that termination of parental rights to the minor children is justified pursuant to Section 2511(a)(1) of the Adoption Act.

## THE AGENCY HAS PROVEN BY CLEAR AND CONVINCING EVIDENCE THAT PARENTAL RIGHTS TO THE MINOR CHILD MUST BE TERMINATED PURSUANT TO 23 Pa.C.S. §2511(a)(2) (5).

The Agency has also proven by clear and convincing evidence that the parental rights to the minor children should be terminated pursuant to 23 Pa.C.S. §2511 (a)(2) and (5) of the Adoption Act. The mandates of these sections are as follows:

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his or her physical or mental wellbeing and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six (6) months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

The Court finds that the conditions which led to the minor children's placement outside the care and custody of Mother and Father continue to exist. The minor children have been in placement for approximately eighteen (18) months and adjudicated dependent for approximately seventeen (17) months. The minor children are safe, loved, and well-bonded to the kinship mother.

17

Father has consistently stated his unwillingness to be a resource for the minor children throughout the entirety of the Agency's involvement with the family. Father has not performed any parental duties or obligations on behalf of the minor children since the adjudication of dependency, and he has not made any progress in alleviating the circumstances which necessitated the original placement of the minor children.

Subsequent to the filing of the Petition for ITPR on July 16, 2018, Mother became more cooperative with the Agency and, as her attorney stated to Dr. Gransee, Mother began working "very diligently" on the Permanency Plan. The Court acknowledges that, in working with the current Pressley Ridge Team, Mother has been more dutiful in attending visits and required appointments, and has begun forming a bond with the minor children. At this time, Mother appears to have a stable housing situation, although the Caseworker provided testimony that directly conflicts with Mother's testimony, namely that the Caseworker believes that Mother is still residing with Maternal Grandmother. Mother provided testimony regarding her finances; however, it remained unclear to the Court how much income Mother receives and the total amount she owes towards bills and other expenditures each month. The Court finds that Mother's moderate level of progress in recent months is due largely to an exceptional effort by her Pressley Ridge team and will not be able to be independently sustained by Mother going forward.

While Mother cooperated in the psychiatric evaluation and the Parenting Capacity Assessment on October 10, 2018, she was not fully compliant with following the

13

recommendations of such evaluations. Furthermore, the Caseworker expressed continued concerns regarding Mother's potential dependence on prescription medications and her mental health as it relates to her past overdoses.

Overall, Mother and Father have failed to remediate the conditions which led to the minor children's placement and have failed to provide substantial parental duties on behalf of the minor children. In consideration of this testimony, the Court finds that the Agency clearly and convincingly established that termination of parental rights is justified pursuant to Sections 2511(a)(2) and (5) of the Adoption Act.

### IN CONSIDERATION OF §2511(b), TERMINATION OF PARENTAL RIGHTS WOULD BEST SERVE THE NEEDS AND WELFARE OF THE MINOR CHILD

Having established the statutory grounds for the involuntary termination of the parental rights of Mother and Father, the Court's final consideration is whether termination of parental rights will best serve the developmental, physical and emotional needs and welfare of the children. 23 Pa.C.S. §2511(b).

> [T]he Court must carefully consider the tangible dimension, as well as the intangible dimension – the love, comfort, security, and closeness – entailed in a parent-child relationship. (citations omitted). The court must consider whether a bond exists between the child and [parents], and whether termination would destroy an existing beneficial relationship. In re: B.N.M., 856 A.2d 847 (Pa. Super. 2004).

The Court has thoroughly evaluated the minor children's relationships in this matter. The Court finds that the minor children do not have a parental relationship with Mother or Father. The youngest of the minor children, A.W.S., has never lived with Mother, while the oldest, G.W.S., has now lived more than half of his life with the kinship mother. The Court

19

finds that the minor children have a much stronger parental bond with the kinship mother and that the minor children look to the kinship mother for safety and comfort. Additionally, it is the kinship mother who provides for the minor children's daily needs as well as any specialized developmental, education, and medical needs.

The Court also finds that the bond between the minor children and kinship mother is strong and healthy. Testimony established that the children are happy and feel comfortable in the kinship mother's care. The bond that the minor children have with the kinship mother can provide safety, security and permanency for the children. Termination of Mother's and Father's parental rights will best meet the needs of the minor children and permit the children to achieve the stability they deserve.

## CONCLUSIONS OF LAW

1. The current placement of G.W.S. and A.W.S. continues to be necessary and appropriate. 42 Pa.C.S. §6351(f)(1).

2. Mother and Father have not been able to fully meet the goals set forth in the family service plans. 42 Pa.C.S. §6351(f)(2).

3. The circumstances which necessitated the children's original placement have not been alleviated. 42 Pa.C.S. §6351(f)(3).

4. The current goal for the children of reunification with a parent is no longer feasible and appropriate because Mother and Father have failed to meet the irreducible minimum requirements necessary to parent the children. 42 Pa.C.S. §6351(f)(4).

20

5. The minor children's best interests demand that the current goal of reunification with a parent be changed to placement for adoption.

6. Mother and Father have failed to perform parental duties for a period well in excess of six (6) months. 23 Pa.C.S. §2511(a)(1).

7. The Agency has established by clear and convincing evidence that the inability and refusal of Mother and Father have caused the children to be without parental care, control or subsistence necessary for their physical or mental well-being and the conditions cannot be remedied by Mother or Father. 23 Pa.C.S. §2511(a)(2).

8. The Agency has established by clear and convincing evidence that the conditions which led to the children's removal from Mother's and Father's care continue to exist, and Mother and Father cannot remedy these conditions within a reasonable time. 23 Pa.C.S. §2511(a)(5).

## SUMMARY

In conclusion, the Court believes that the termination of Mother's and Father's parental rights is clearly in the best interests of the minor children to promote their welfare and allow them to achieve permanency. The Court is therefore executing a Decree terminating Mother's and Father's parental rights with respect to G.W.S. and A.W.S., and an Order directing that the current goal of reunification with parent or guardian for G.W.S. and

21

A.W.S. is changed to placement for adoption. Said Order also establishes the concurrent goal

for G.W.S. and A.W.S. to be placement with a legal custodian (non-relative).


Dated:  February 7, 2019                          BY THE COURT,

TODD RUSSELL PLATTS, JUDGE

# IN THE COURT OF COMMON PLEAS OF YORK COUNTY, PENNSYLVANIA

In the Interest of:  :
    G.W.S.  :  No. CP-67-DP-306-2017
    A.W.S.  :  No.CP-67-DP-307-2017
        Minor Children  :  Change of Goal

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

In Re: Adoption of  :
    G.W.S.  :  No. 2018-0089
    A.W.S.  :  No. 2018-0088
        Minor Child  :  Termination of Parental Rights

## STATEMENT OF LOWER COURT PURSUANT TO Pa.R.A.P. 1925(a)(2)(ii)

AND NOW, this 2nd day of April, 2019, this Court is in receipt of notice that appeals have been filed by  E.W.  (hereinafter, "Mother") and  T.S.  (hereinafter, "Father") in the above matters. While the undersigned delineated substantive reasons for the February 7, 2019 Adjudication subject to appeal, this Court shall offer the following additional insights and reasoning for said Adjudication.

From approximately August 2017, when G.W.S. and A.W.S. (hereinafter, "the minor children") were placed into the care and custody of the York County Office of Children, Youth, and Families, (hereinafter, "the Agency") until July 2018 when the Agency filed its Petitions for Change of Court-Ordered Goal (hereinafter, "COG") and Involuntary Termination of Parental Rights (hereinafter, "ITPR"), both Mother and Father had made only minimal progress in alleviating the circumstances which necessitated the minor children's placement. In July 2018, the oldest of the minor children had been out of Mother's and

Father's care for more than half of his life while the younger of the minor children had never lived with Mother or Father.

Subsequent to the filing of the Petitions for COG and ITPR on July 16, 2018, Mother began making progress towards the goals enumerated in the Permanency Plan. The Court acknowledged that, in working with her Pressley Ridge Team, Mother made progress in attending visits and required appointments, creating stability for herself, and forming a bond with the minor children. However, the Court found that Mother's moderate level of progress in those recent months was largely due to an exceptional effort by her Pressley Ridge team and Mother would not be able to independently sustain such efforts by herself going forward.

On October 10, 2018, Mother received a Parenting Capacity Assessment (hereinafter, "the Assessment") by Dr. Jonathan Gransee to provide information regarding her psychological functioning and to determine her capacity to parent the minor children. In his Assessment, Dr. Gransee reported that, **"at this point...[Mother] does not have the capacity to manage herself, let alone another living being, and as such, her capacity to parent a child is impaired."** Similarly, this Court found that, despite Mother's progress in recent months, she was not prepared to regain custody of the minor children at the time testimony was taken on the Agency's Petitions for COG and ITPR, approximately eighteen (18) months after the minor children were originally placed in the Agency's care and custody. The Court was unable to determine when Mother would be physically, mentally, and financially prepared to regain custody of the minor children.

Since the adjudication of dependency, Father had made only minimal progress toward alleviating the circumstances which necessitated the minor children's placement. From the

beginning of the Agency's involvement with this family, Father stated that he was not a resource for the minor children. When the first Interstate Compact on the Placement of Children (hereinafter, "ICPC") referral was made, Father reiterated his unwillingness to be a resource and the first ICPC was denied at Father's request. A second ICPC referral was made but was never completed due to non-cooperation by Father.

Furthermore, Father chose not to attend the two (2) days of testimony on the Petitions for COG and ITPR in person but rather participated by phone. Father failed to offer any testimony in opposition of his parental rights to the minor children being terminated. While participating by phone on the first day of testimony, Father was in a department store and was clearly distracted by his shopping instead of attentively participating in the hearing.

Any further basis for the termination of parental rights for Mother and Father can be found in the Court's Adjudication dated February 7, 2019, regarding said matter.

BY THE COURT,

_____
TODD RUSSELL PLATTS, JUDGE